UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>RAYMOND NAVA, JR. and MAX CARIAS TORRES,<br><br>    Defendants. | Criminal Action No. 23-73-4, -6 (CKK) |

**MEMORANDUM OPINION**
(April 28, 2023)

Defendant Raymond Nava, Jr. ("Nava") and Max Carias Torres ("Torres" and, collectively, "Defendants") are charged by indictment with conspiring to traffic, with others, thousands of counterfeit pills of fentanyl. On April 26, 2023, Magistrate Judge Alicia C. Rosenberg of the United States District Court for the Central District of California ordered both Nava and Torres released with conditions pending trial. Detention Order, ECF No. 4, *United States v. Carias-Torres*, Case No. 23-mj-2042; Detention Order, ECF No. 5, *United States v. Nava*, Case No. 23-mj-2044 (collectively, "Detention Orders"). Judge Rosenberg stayed the Detention Orders until 4:00 PM ET today, April 28, 2023.

Before the Court is the Government's [28] Emergency Motion for *De Novo* Review of Magistrate Judge's Release Order and Request to Stay Defendants' Release Pending *De Novo* Review. The Government requests that the Court vacate the Detention Orders and order Defendants detained pending trial. The Government moves on an emergency basis on account of the limited stay issued in this matter. Upon consideration of the pleadings,[1] the relevant legal

---

[1] The Court's consideration has focused on:
- The Detention Orders;
- The Government's Emergency Motion for *De Novo* Review of Magistrate Judge's Release Order and Request to Stay Defendants' Release Pending *De Novo* Review, ECF No. 28

1

authority, and the record before the Court, the Court shall **GRANT** the Government's Motion, **VACATE** the prior release orders, and order Defendants held without bond pending trial and transported to the District of Columbia.

## I. BACKGROUND

The factual record thus far is underdeveloped. There is no opinion, memorandum, or statement of reasons attached to the Detention Orders, and the Court has access only to an audio recording of just Torres' detention hearing. There, Magistrate Judge Rosenberg's finding appeared to be based exclusively on the relative paucity of the Government's evidence elicited at the hearing. Indeed, it appears that a thorough factual proffer was advanced for the first time only in the instant Motion before this Court. Therefore, the facts discussed here are based predominantly upon that proffer, including the associated photographic evidence presented by the Government. In an exercise of its discretion, the Court will rule definitively upon the record presently before it, sparse as it is. *See United States v. Sheffield*, 799 F. Supp. 2d 18, 29 (D.D.C. 2011) ("The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." (cleaned up)). As discussed further below, to the extent newly-appointed defense counsel discover additional evidence or develop further argument after consultation with their respective clients, the Court welcomes motions for reconsideration, which the Court would review "as justice requires." *See United States v.*

---

("Motion" or "Mot.") and exhibits therein;
- Defendant Torres' Response to Court's April 27, 2023 Minute Order, ECF No. 32;
- Defendant Nava's Opposition to Government's Emergency Motion, ECF No. 34 ("Nava Opp.");
- Defendant Torres' Memorandum of Law, ECF No. 34-1 ("FPD Opp.");
- Defendant's Reply to the Government's Opposition, ECF No. 191 ("Repl."); and
- An audio recording of the detention hearing in *United States v. Carias-Torres*, Case No. 23-mj-2042 (C.D. Cal. Apr. 28, 2023).

*Caldwell*, Crim. A. No. 21-181 (CKK), 2022 WL 168343, at *5 (D.D.C. Jan. 19, 2022). The Court makes this determination based on the Government's exceptionally strong showing here of danger to the community and risk of flight.

### A. Procedural Background

On March 9, 2023, the Government filed an indictment against Defendants Hector David Valdez, Craig Eastman, and Charles Jeffrey Taylor. ECF No. 1 at 1. On or about April 3, 2023, a grand jury then returned a superseding indictment, adding, among others, Nava and Torres. ECF No. 23 (sealed). Magistrate Judge Robin M. Meriweather of this jurisdiction then issued arrest warrants for Defendants, and these warrants appear to have been executed in or around Los Angeles, California on or about April 26, 2023. Affidavit Re Out-of-District Warrant, ECF No. 1, *United States v. Carias-Torres*, Case No. 23-mj-2042; *see also id.* ECF No. 3; Affidavit Re Out-of-District Warrant, ECF No. 1, *United States v. Nava*, Case No. 23-mj-2044; *see also id.* ECF No. 3. Counsel was appointed in that jurisdiction for the purposes of a detention hearing later that day. *See* Minutes, ECF No. 4, *United States v. Carias-Torres*, Case No. 23-mj-2042 ("Charles James Snyder for Max Carias-Torres, Deputy Federal Public Defender, present."); Minutes, ECF No. 4, *United States v. Nava*, Case No. 23-mj-2044 ("Peter Johnson for Raymond Nava, Jr, Appointed, present"). Defendants appeared before Magistrate Judge Rosenberg the evening of April 26, 2023. It appears from the audio recording of the Torres detention hearing that Magistrate Judge Rosenberg declined to make the requisite finding of flight or danger to the community almost entirely because the Government did not elicit testimony explaining the items found during the search warrant's execution. Noting that her ruling might have been different had the Government presented such evidence (or, indeed, any evidence), Magistrate Judge Rosenberg stayed the Detention Orders until 1:00 PM PT to afford the Government an opportunity to appeal to this Court.

The Government did so, filing its instant, emergency Motion the morning of April 27, 2023. The Court then secured counsel for Defendants in this jurisdiction, and ordered responsive briefing by 8:00 PM ET later that day.  The Government filed its reply at approximately 7:20 AM ET this morning, April 28, 2023.  Counsel for both Defendants both note that they have had limited opportunity to meet with their clients and with the counsel appointed in the Central District of California.

### B. Factual Allegations

As addressed above, the Government presented very few allegations to the Magistrate Judge.  The Government has remedied that problem here, detailing the allegations against Defendants, posts and messages from their respective social media accounts, and the firearms and large quantities of drugs seized through searches of Defendants' respective residences.  Broadly, the Government alleges that Nava and Torres dealt in vast amounts of counterfeit fentanyl smuggled into the United States, sold those quantities to distributors, including Defendant Valdez, who later sold them to street-level dealers throughout the United States, including Defendants Eastman and Taylor.  *See* Mot. at 1, 4-8.  A search of Defendant Valdez' residence uncovered approximately 4.5 kilograms of pills partially laced with fentanyl and 0.5 kilograms of powdered fentanyl.  *Id.* at 3.  According to the Drug Enforcement Agency, approximately two milligrams of fentanyl can constitute a lethal dose.   DEA, "Facts About Fenanyl" *available at* https://www.dea.gov/resources/facts-about-fentanyl (last accessed April 28, 2023 10:22 AM ET). Therefore, the Government alleges that the search uncovered approximately 250,000 lethal doses of fentanyl as to the powdered fentanyl alone.

The Government recounts purported social media messages between Valdez and Nava, in which Nava offers to sell "boats" of fentanyl pills to Valdez.  *Id.* at 4.  The Government alleges

that a "boat" is a street term for 1,000 pills. *Id.* at 4 n.1. Additionally, the Government claims that Nava sold 12 firearms and approximately 12,200 counterfeit fentanyl pills to undercover law enforcement across six transactions. *Id.* at 5. A search of Nava's Instagram account purportedly uncovered, among others, images corroborating his alleged illicit dealing in firearms and vast quantities of lethal drugs:



*Id.* at 5.

As to Torres, the Government alleges that he regularly imported substantial amounts of fentanyl from Mexico, selling it to distributors such as Nava. *Id.* at 5. A search warrant executed on Torres' social media returned messages in which he purportedly negotiated selling 25 "boats" (i.e., 25,000 pills) to Nava. The Government also claims that Torres negotiated other large sales

5

of drugs that he obtained from trips to Mexico. *Id.* at 6. The Government appends two images from his Torres' social media corroborating the Government's claim that Torres dealt in vast quantities of counterfeit fentanyl:



*Id.* at 7.

## II.   LEGAL STANDARD

The Government may file "a motion for revocation of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(a). The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Sheffield*, 799 F.

Supp. 2d at 20 (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)). "The motion shall be determined promptly." 18 U.S.C. § 3145(a).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including an offense "for which a maximum term of imprisonment of ten years or more is prescribed in[, *inter alia*,] the Controlled Substances Act," § 3142(f)(1)(C), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273,

1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)).  That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions.  *Id.* at 1280; *see also United States v. Salerno*, 481 U.S. at 751 (requiring the government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").  "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress."  *Munchel*, 991 F.3d at 1283.

### III.  DISCUSSION

Despite the rather underdeveloped record, the Court concludes that the evidence presented by the Government in its briefing clearly requires Defendants' detention pending trial.  That said, the Court acknowledges that counsel for Defendants have had little opportunity to develop the factual record on behalf of their clients given their recent appointment and the expedited briefing schedule.  If counsel discovers new evidence or develops new legal argument that they were not able to present in the instant briefing, the Court encourages defense counsel to move for reconsideration.

**A.  Legal Principles**

As a threshold matter, the Court must address the proper standard to apply at this stage of proceedings.  As explained above, the Government has appealed detention orders pursuant to 18 U.S.C. § 3145.  Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine danger to the community and/or risk of flight.  *See Sabol*, 535 F. Supp. 3d at 69 (citing *Munchel*, 991 F.3d at 1283) (cleaned up).  Defendant Nava maintains that the Government is subject to a heightened standard, in which the Court may grant

8

relief only upon a showing of "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." Nava Opp. at 2.[2] This stricter standard applies to motions for reconsideration, however, and not to direct appeals pursuant to 18 U.S.C. § 3145.

Here, however, in determining whether Defendant is a danger to the community or a flight risk, the Court considers the 18 U.S.C. § 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 34 (D.D.C. 2005) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or flight in advance of trial. Accordingly, the Court orders that Defendants remain detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

---

[2] Defendant Nava relies on this Court's opinion in *United States v. Caldwell*, Crim. A. No. 21-181 (CKK), 2022 WL 168343, at *5 (D.D.C. Jan. 19, 2022). There, the Court denied a motion for reconsideration. The Court did not address a direct appeal. Defendant Nava's reliance on this case is therefore inapposite.

### B. Nature and Circumstances of the Offense Charged

Turning to the § 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). In this case, a rebuttable presumption of detention applies, because Defendants have been charged by indictment with serious violations of the Controlled Substances Act. *See* 18 U.S.C. § 3142(e)(3)(A); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165-66. Here, the Government has presented convincing evidence that Defendants conspired to traffic and did in fact traffic in *hundreds of thousands* of grams of fentanyl. The Court must therefore presume that no condition or combination of conditions will reasonably assure Defendants' appearance as required or the safety of the community. To rebut this presumption, Defendants must "offer some credible evidence" that they will not endanger the community or flee if released. *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016).

The nature and circumstances of the offenses here definitively weigh in favor of detention. Defendants Nava and Torres are charged with conspiring to distribute and possess with intent to distribute 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846; and Torres is charged with international promotional money laundering in violation of 18 U.S.C. § 1956(a)(2)(A). The first charge carries a ten-year mandatory minimum sentence, with a maximum of life. 18 U.S.C. § 841(b)(1)(A)(vi). "Moreover, this is not the case of an individual seller working alone." *Brown*, 538 F. Supp. 3d at 167. The Government alleges not just a conspiracy among the Defendants in this action, but vast distribution across the United States. Therefore, Defendants' "alleged participation in the conspiracy charged thus strongly

suggests that, if released, [they] would have the means to purchase and distribute narcotics and thereby endanger [not just] the D.C. community," but also communities throughout the United States. *See id.* Therefore, this first factor weighs in favor of detention.

### C. Weight of the Evidence

The weight of the evidence against Defendants also favors continued pretrial detention. Law enforcement recovered messages and images from Defendants' social media accounts reflecting that Torres dealt in huge quantities of counterfeit opioids and that Nava dealt in large quantities of drugs and guns. Additionally, the Government alleges that Nava sold drugs and guns to undercover law enforcement on six occasions. From a search of Torres' residence, the Government recovered: "approximately 480 grams of suspected crystal meth, 45 grams of suspected fake [] pills containing fentanyl; 44 grams of suspected powder cocaine, 7 cell phones, a suspected drug ledger, and western union receipts (which appear to be additional evidence of [Torres'] money laundering." Mot. at 8. The weight of this evidence is strong. *See Brown*, 538 F. Supp. 3d at 168-69. More broadly, because Defendants photographed themselves trafficking in large amounts of illicit drugs, this factor weighs in favor of detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022).

### D. History and Characteristics of the Defendant

Under the third section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3). As to Nava, a lack of a serious criminal record weighs against pretrial detention. *See Brockhoff*, 590 F. Supp. 3d at 305. Nevertheless, the Government

proffers, and Nava does not contest, that a domestic violence protective order was recently entered against him in California state court. Mot. at 15. The Court has little information regarding family and community ties. Therefore, this factor stands in equipoise for Defendant Nava. Even were Defendant Nava to have strong family and community ties, those facts would not satisfy his burden to demonstrate lack of danger or risk of flight if released. Torres, on the other hand, appears to have a substantial criminal history for narcotics trafficking and gun offenses. Mot. at 16. The Government alleges that Torres also makes regular trips to Mexico for resupply. *Id.* at 7. Therefore, this factor weighs in favor of detention as to Defendant Torres.

### E. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community. *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (narcotics trafficking generally). Particularly so here given the vast amounts of drugs at issue, prior alleged gun sales, and prior charged gun offenses. Defendant Torres appears to have substantial ties to Mexico, and the statutory penalties Defendants face provide both Defendants a strong incentive to flee. More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious danger Defendant[s'] release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020). Therefore, this factor also weighs in favor of detention.

\*   \*   \*

All in all, even if Defendants could rebut the presumption of detention, the Court finds that no set of conditions can assure their presence at trial or address the threat of danger they pose to

12

communities in the District of Columbia or Los Angeles. The Government has shown that Defendants have strong incentives to flee given the seriousness of the charges, the apparent weight of the evidence, and Torres' ties to Mexico. Therefore, the Court concludes that the section 3142 factors require pretrial detention.

### IV. CONCLUSION

On the whole, the record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community if Defendants were released pending trial. 18 U.S.C. § 3142(e)(1). As such, the Court **GRANTS** the Government's [28] Emergency Motion for *De Novo* Review of Magistrate Judge's Release Order and Request to Stay Defendants' Release Pending *De Novo* Review, **VACATES** the prior release orders, and orders Defendants held without bond pending trial and transported to the District of Columbia. An appropriate order accompanies this memorandum opinion.

**Dated:** April 28, 2023

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge