**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| v. | : Criminal No. 23-cr-73-4 (CKK) |
| **RAYMOND NAVA, JR.** | : |
| **Defendant.** | : |

**GOVERNMENT'S SUBMISSION OF ELEMENTS OF OFFENSE AND**
**PROFFER OF EVIDENCE IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY**

I.  Summary of the Plea Agreement

Defendant Raymond Nava, Jr. agrees to admit guilt and enter a plea of guilty to the Fourth Superseding Indictment, charging one count of Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, in violation of Title 21, United States Code, Section 846.

II.  Elements of the Offense

Count One of the Fourth Superseding Indictment charges that from on or about August 2020 to the date of his arrest, the Defendant conspired with others, including all of the other defendants listed in the indictment, to distribute and possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl. The essential elements of the offense of conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl are:

(1)   That an agreement existed between two or more persons to commit the crimes of distribution and possession with the intent to distribute a controlled substance, in particular, a mixture and substance containing a detectable amount of fentanyl;

(2)   That the defendant intentionally joined in that illegal agreement; and

(3)     The amount of said mixture and substance, which includes the reasonably foreseeable conduct of all the members of the conspiracy, was four hundred grams or more.

The offense of violating 21 U.S.C. § 846, by conspiring to violate federal narcotics laws, does not include as an element, the commission of an overt act in furtherance of the conspiracy. *United States v. Pumphrey*, 831 F.2d 307, 308-09 (D.C. Cir. 1987).

III.    Penalties for the Offense

The penalty for conspiring to commit a narcotics offense, in violation of 21 U.S.C. § 846, is the same as that prescribed for the substantive offense, "the commission of which was the object of the . . . conspiracy." In this case, the penalty is the same as for a violation of 21 U.S.C. § 841(b)(1)(A)(vi), which is:

(A)     a term of imprisonment of not less than 120 months (10 years) and not more than life;

(B)     a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000;

(C)     a term of supervised release of not less than five years; and

(D)     a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

IV.     Brief Statement of the Facts

The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea as to Count One of the Fourth Superseding Indictment.

Had this case gone to trial, the Government's evidence would prove the following beyond a reasonable doubt:

1. From on or about August 2020 and continuing until the date of his arrest, April 26, 2023, the Defendant conspired to, and did in fact, distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug-controlled substance. The amount of said mixture and substance, including the reasonably foreseeable conduct of all the members of the conspiracy known to the Defendant, was 12-36 kilograms.

2. Specifically, the Defendant was an upstream Los Angeles-based supplier of fentanyl-laced counterfeit oxycodone pills to other Los Angeles-based fentanyl traffickers, including Hector David Valdez, a co-defendant charged in the Fourth Superseding Indictment.

3. Valdez is a distributor of fentanyl-laced counterfeit oxycodone pills to multiple traffickers located in and around the District of Columbia.

4. The Defendant knew that co-defendant Valdez was reselling fentanyl-laced counterfeit oxycodone pills that the Defendant had supplied to Valdez.

5. The Defendant worked in coordination with Max Carias Torres, Ulises Aldaz, and Omar Arana, each of whom are co-defendants charged in the Fourth Superseding Indictment, to distribute fentanyl to Los Angeles-based traffickers, including co-defendant Valdez.

6. In coordinating his sales of fentanyl-laced counterfeit oxycodone pills, the Defendant worked with co-defendants Carias Torres, Aldaz, and Arana to obtain bulk quantities of pills for redistribution, including obtaining pills from Carias Torres' Mexico-based sources of supply.

7. The Defendant also served as an intermediary for his co-conspirators in facilitating the sales of bulk quantities of fentanyl to downstream redistributors in the conspiracy. For example, on

November 4, 2022, the Defendant direct messaged co-defendant Arana on Instagram to arrange a bulk sale of fentanyl-laced counterfeit oxycodone pills to Valdez, stating "if you [i.e., Arana] can give them [i.e., the pills] to me at .50 cause he wants [them] at .55," to which Arana agreed, followed by the Defendant asking "do you break down the fetty?" Arana assured the Defendant that he did not dilute the product. The Defendant then informed Arana that "the play" was on November 6, and that "for 40 boats [i.e., 40,000 pills], I need them at .50." Arana agreed, stating "bet pri and yeah I got u @ .50."

8. In addition to his collaboration with co-defendants Carias-Torres, Arana, Aldaz, and Valdez, the Defendant also conducted multiple controlled purchases of narcotics and firearms as part of controlled sales that were facilitated by federal law enforcement agents.

9. For example, on January 26, 2023, the Defendant sold a Glock model 26 Gen 5 9mm handgun and a Berretta Model BU9 Nano 9mm handgun to an undercover federal law enforcement agent in Los Angeles, California, in the early afternoon. The Defendant utilized a superhero-themed tote bag to conceal the firearms before conducting the transaction. Approximately two hours later on the same day, the Defendant conducted a second controlled transaction with the same undercover federal law enforcement officer, selling 2,000 blue M-30 fentanyl-laced counterfeit oxycodone pills for $2,000. The Defendant utilized the same superhero-themed tote bag to conceal the pills before conducting the transaction.

10. In total, the Defendant sold 12,000 fentanyl-laced counterfeit oxycodone pills and one dozen firearms, including an AR-style rifle, as part of controlled sales that were facilitated by federal law enforcement agents over the life of conspiracy.

11. During the timeframe of the charged conspiracy in Case No. 23-cr-73, the Defendant additionally conspired with New York-based fentanyl traffickers, including Jose Santiago.

12. The Defendant facilitated the transportation of bulk quantities of fentanyl-laced counterfeit oxycodone pills to New York-based fentanyl traffickers through various smuggling methods, including the utilization of interstate commercial shipping and mail carriers, as well as commercial airline travel.

13. Communications evidence, as well as physical seizures, indicate that the Defendant facilitated the transfer of tens of thousands of fentanyl-laced counterfeit oxycodone pills to downstream fentanyl traffickers, who were primarily based in the Los Angeles area, but also operated in different parts of the United States, including Hector Valdez, who then sent tens of thousands of pills to Washington D.C.

14. The Defendant agrees that he personally has read, or had read to him, all the Indictments in this case, including the allegations and charges against the Defendant in those Indictments. The Defendant admits that all of the allegations in those Indictments are true, and that he does not have information to dispute or disprove those allegations set forth in the Indictments in any way.

Sincerely,

Matthew M. Graves
United States Attorney
D.C. No. 481052

By:   /s/ Solomon S. Eppel
      Solomon S. Eppel
      Matthew W. Kinskey
      Assistant United States Attorneys

### Defendant's Acceptance

I have read each of the pages that constitute the Government's proffer of evidence and have discussed it with my attorney, Pleasant Brodnax. I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 5/9/24

Raymond Nava, Jr.
Defendant

### Attorney's Acknowledgment

I have read each of the pages that constitute the Government's Proffer of Evidence, reviewed them with my client, Raymond Nava, Jr., and discussed the provisions of the proffer with her fully. These pages accurately and completely set forth the Government's proof, as I understand it.

Date: 5/9/24

Pleasant Brodnax
Counsel for Defendant
Raymond Nava, Jr.